UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LIONEL E. TURNER,

                    Plaintiff,

                                         Case No. 1:24-cv-348

v.

                                         Honorable Phillip J. Green

UNKNOWN PELKY, et al.,

                    Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."  *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal.  *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility. Plaintiff sues the following ECF personnel in their individual and official capacities: Assistant Resident Unit Manager Unknown Pelky, Prison Counselor Patrick Miseta, Assistant Deputy Warden Jason Erway, Deputy Warden Unknown Clouse, and Warden Michael Burgess.  (Compl., ECF No. 1, PageID.1–3.)

In Plaintiff's complaint, he alleges that he was transferred to ECF on February 2, 2023.  (*Id.*, PageID.7.)  Plaintiff states that at that time, he was a level 2 inmate. (*Id.*)  Four days after his arrival at ECF, on February 6, 2023, Defendant Pelky called Plaintiff to the prison counselor's office, and Pelky told Plaintiff "that he did not like [Plaintiff and] didn't want [Plaintiff] on his compound because he didn't feel safe with [Plaintiff] around his staff due to [Plaintiff's] history of assaulting multiple staff members."[2]  (*Id.*)  Plaintiff states that he "only ha[s] one assault on staff, which happened [on] June 6, 2011."  (*Id.*)  Plaintiff alleges that Defendant Pelky also told Plaintiff that if Plaintiff "was to so much as catch a class II misconduct, [Pelky] would have his staff write it as a class II [and] then he would have it elevated to a class I

---

[2] In this opinion, the Court corrects the punctuation and spelling in quotations from Plaintiff's complaint.

just to put [Plaintiff] in segregation, raise [Plaintiff's] points, deem [Plaintiff] unmanageable, [and] place [Plaintiff] in level 4." (*Id.*)

Subsequently, on February 8, 2023, Plaintiff was "surrounded," "handcuffed, and placed in segregation for a destruction and or misuse of property [misconduct] for sending out a 3-way JPay email." (*Id.*)  Plaintiff was released from segregation on February 16, 2023, and he was classified back to level 2; however, Plaintiff alleges that Defendant Pelky "stopped that move and forced [Plaintiff] into level 4 while [Plaintiff] still had level two points, claiming to multiple staff members . . . that [Plaintiff] was being placed in level 4 because [he] strangled [a] staff member." (*Id.*) Plaintiff claims that "[b]ecause of the staff corruption from [Defendant] Pelky, [Defendant] Burgess, [Defendant] Erway, and [Defendant] Clouse . . . allowed the actions of [Defendant] Pelky." (*Id.*)  On April 5, 2023, Defendant Miseta told Plaintiff that Plaintiff "shouldn't have been placed in level 4 to begin with." (*Id.*)

On May 21, 2023, Plaintiff "was assaulted and had hot liquid thrown in [his] face, which burned the left side of [his] face." (*Id.*)  Plaintiff "was placed back in level 4." (*Id.*) At an unspecified time, Plaintiff complained "to the front office and MDOC's Director's Office," both of which "ignored the outstanding issues at hand." (*Id.*)

On August 14, 2023, Plaintiff submitted a grievance "regarding [his] placement [and] the staff corruption from [Defendant] Pelky," which included Pelky telling Plaintiff that Pelky "didn't like [Plaintiff] or care[] how many points [Plaintiff] had and he was going to keep [Plaintiff] in level 4 as long as he pleased, [so] grieve that and see how far it gets [Plaintiff]." (*Id.*)

At an unspecified time, Defendants Erway and Clouse "claimed that [Plaintiff] caught multiple misconducts while in level two," but Plaintiff "only received one [on] Feb[ruary] 8th, 2023." (*Id.*)  Plaintiff states that on October 5, 2023, he "was reclassified after going 8 months ticket free, [and] a 6-month period of good work effort in school," and his "custody level dropped from level two to level 1, [and his] points dropped from 13 to 4." (*Id.*)  That same day, October 5, 2023, Plaintiff "was attacked once again by another inmate with a knife from behind." (*Id.*)  Plaintiff "fought back" and "in defending [him]self," he was "placed back in seg[regation] [and] was told by [the] hearing officer that [he] had [a] self-defense claim, but [Plaintiff] was placed back into level 4 [and his] safety [was] back in danger." (*Id.*)  Plaintiff "sustained a long cut down [his] right forearm from . . . preventing [him]self from being stabbed," and he "didn't receive any medical attention at all because they said the injury wasn't really bad." (*Id.*, PageID.8.)

Plaintiff submitted "more grievances," and was "denied at every step from [Defendant] Burgess, [Defendant] Clouse, [and Defendant] Erway." (*Id.*, PageID.7.) Plaintiff's family members also contacted "Lansing, reporting everything," and on February 23, 2024, Plaintiff "talked to [non-party] Heidi Washington face-to-face through housing unit two's small yard gate regarding everything that's going on at [ECF]." (*Id.*)  Plaintiff states that Washington "took [his] name [and] told [Plaintiff] that she would take care of everything." (*Id.*)  Plaintiff "fear[s] for [his] safety [and] wellbeing at this facility around this administration." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to be free from retaliation, Eight Amendment rights, and Fourteenth Amendment due process and equal protection rights. (*Id.*, PageID.4, 8.) As relief, Plaintiff requests monetary damages and requests "to be placed in [his] rightful custody level without fear of retaliation." (*Id.*, PageID.8, 15.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*,

630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Defendant Miseta

Plaintiff's only allegation regarding Defendant Miseta is that on April 5, 2023, Miseta told Plaintiff that Plaintiff "shouldn't have been placed in level 4 to begin with." (Compl., ECF No. 1, PageID.7.)

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.   And, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).   Here, Plaintiff fails to explain, and the Court fails to discern, how Defendant Miseta's statement that Plaintiff should not have been placed in level 4 violated Plaintiff's constitutional rights. Plaintiff does not allege that Defendant Miseta had any involvement in determining Plaintiff's custody level or housing placement, and Defendant Miseta's statement, on

its own, does not show that Miseta took any action against Plaintiff, let alone any unconstitutional action against him.

Accordingly, Plaintiff fails to state any claim upon which relief may be granted against Defendant Miseta.

### B.    Defendants Erway, Clouse, and Burgess

Plaintiff claims that "[b]ecause of the staff corruption from [Defendant] Pelky, [Defendant] Burgess, [Defendant] Erway, and [Defendant] Clouse . . . allowed the actions of [Defendant] Pelky." (Compl., ECF No. 1, PageID.7.)  Plaintiff also claims that he submitted "more grievances," and was "denied at every step from [Defendant] Burgess, [Defendant] Clouse, [and Defendant] Erway." (*Id.*)

As an initial matter, Plaintiff has no due process right to file a prison grievance.  The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  And, Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Thus, although it is clear that Plaintiff disagreed with Defendants Erway, Clouse, and Burgess's responses to his grievances, because

Plaintiff has no liberty interest in the grievance process—including the responses to grievances—Defendants' conduct did not deprive Plaintiff of due process.

Further, the United States Court of Appeals for the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.*

Moreover, to the extent that Plaintiff seeks to hold Defendants Erway, Clouse, and Burgess liable for the actions of their subordinates, government officials, such as Defendants Erway, Clouse, and Burgess, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). Here, Plaintiff fails to allege any *facts* showing that Defendants Erway, Clouse, and Burgess encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct.

Furthermore, for all of the reasons set forth below, even considering each of Plaintiff's claims against these Defendants, he fails to state any claim against them upon which relief may be granted. *See infra* Sections II.C–E.

### C.   First Amendment Retaliation Claims

When setting forth his claims, Plaintiff references "retaliation." (Compl., ECF No. 1, PageID.8.) Based on this reference, the Court construes Plaintiff's complaint to raise a First Amendment retaliation claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037

11

(6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, to the extent that Plaintiff seeks to bring a retaliation claim against Defendant Pelky, Plaintiff's retaliation claim fails at the first step because he fails to allege any facts showing that he engaged in protected conduct prior to any of Defendant Pelky's actions.  Instead, Plaintiff's allegations show that he only engaged in protected conduct by filing grievances and complaining to "the front office" and the Director's Office *after* Defendant Pelky took the alleged adverse actions against him. (*See* Compl., ECF No. 1, PageID.7.)  Moreover, Plaintiff alleges that Defendant Pelky told Plaintiff on February 6, 2023, that Pelky "did not like [Plaintiff and] didn't want [Plaintiff] on his compound because he did not feel safe with [Plaintiff] around his staff due to [Plaintiff's] history of assaulting multiple staff members."   (*Id.*) Therefore, the facts alleged by Plaintiff in his complaint suggest that any adverse action taken by Defendant Pelky was motivated by Defendant Pelky's dislike of Plaintiff due to Plaintiff's prior assault on a staff member, rather than being motivated by Plaintiff's engagement in any protected conduct.

As to Defendants Erway, Clouse, and Burgess, Plaintiff's First Amendment retaliation claim is entirely conclusory.  Plaintiff fails to allege any facts to show that these Defendants retaliated against him in any way, and "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted).  Under these circumstances, even if Plaintiff had alleged a vague suggestion of temporal

proximity between his protected conduct and any alleged adverse action—which he has not—this would be insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims will be dismissed.

### D.    Eighth Amendment Claims

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment.   (Compl., ECF No. 1, PageID.4, 8.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII.  In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to

13

conditions of confinement claims).   The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.   To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

### 1.    Failure to Protect

In Plaintiff's complaint, he claims that Defendants failed to protect him from two separate assaults by two different inmates.  (Compl., ECF No. 1, PageID.8.)

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates."  *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833.  To show a violation of this right, a plaintiff must show that the defendants were deliberately indifferent to the plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).  Although a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection"

14

between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

Here, Plaintiff alleges that on May 21, 2023, he "was assaulted and had hot liquid thrown in [his] face, which burned the left side of [his] face." (Compl., ECF No. 1, PageID.7.)  Plaintiff was then "placed back in level 4."  (*Id.*)  Plaintiff complained "to the front office and MDOC's Director's Office," both of which "ignored the outstanding issues at hand."  (*Id.*)  Thereafter, on August 14, 2023, Plaintiff submitted a grievance "regarding [his] placement [and] the staff corruption from [Defendant] Pelky," which included Pelky telling Plaintiff that Pelky "didn't like [Plaintiff] or care[] how many points [Plaintiff] had and he was going to keep [Plaintiff] in level 4 as long as he pleased, [so] grieve that and see how far it gets [Plaintiff]."  (*Id.*)  Subsequently, on October 5, 2023, Plaintiff "was reclassified after going 8 months ticket free, [and] a 6-month period of good work effort in school," and his "custody level dropped from level two to level 1, [his] points dropped from 13 to 4." (*Id.*) That same day, October 5, 2023, Plaintiff "was attacked once again by another inmate with a knife from behind."  (*Id.*)  Plaintiff was then "placed back into level 4." (*Id.*)

The Court does not minimize Plaintiff's experience with respect to the two assaults; however, Plaintiff fails to allege any facts showing that anyone, let alone Defendants, knew, or even had reason to know, that Plaintiff faced a substantial risk of harm prior to the assaults.  Indeed, Plaintiff does not allege any facts to suggest that he himself had reason to believe that he faced a risk of harm prior to the assaults.

Although Plaintiff references complaining to the "front office" about unspecified "outstanding issues at hand," and filing a grievance about Defendant Pelky's alleged corruption, Plaintiff does not allege that he advised Defendants about concerns regarding his personal safety and the risk of assault from the other two inmates prior to the assaults. Under these circumstances, Plaintiff has failed to show that Defendants knew that Plaintiff faced a substantial risk of harm and disregarded that risk. *See Farmer*, 511 U.S. at 837.

Accordingly, for these reasons, Plaintiff's Eighth Amendment failure to protect claims will be dismissed.

### 2.      **Medical Care**

The Eighth Amendment is also violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner . *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

Here, Plaintiff alleges that after the October 5, 2023, attack, in which the other inmate had a knife, Plaintiff "sustained a long cut down [his] right forearm from . . . preventing [him]self from being stabbed." (Compl., ECF No. 1, PageID.8.) Plaintiff claims that he "didn't receive any medical attention at all because they said the injury wasn't really bad." (*Id.*) Assuming, without deciding, that Plaintiff's injury was

sufficiently serious to satisfy the objective component of the relevant two-prong test, as to the subjective component, Plaintiff does not allege that any of the named Defendants were involved in Plaintiff's receipt, or lack thereof, of medical care. Where a person is named as a defendant without an allegation of specific conduct, the complaint or claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Accordingly, because Plaintiff fails to allege that any of the named Defendants were involved in his receipt of medical care, Plaintiff fails to state an Eighth Amendment claim against Defendants regarding Plaintiff's lack of medical care.

### E. Fourteenth Amendment Claims

#### 1. Due Process Clause

Plaintiff claims that his placement at a level 4 custody level violated his due process rights under the Fourteenth Amendment. (*See, e.g.*, Compl., ECF No. 1, PageID.4, 7, 10.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and

(2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As relevant to Plaintiff's claim, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Moreover, although it is clear that Plaintiff did not want to be held at a level 4 custody level, Plaintiff alleges insufficient facts to suggest that his placement at level 4 was an atypical and

significant deprivation.  Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendants regarding his placement at level 4.

Furthermore, to the extent that Plaintiff intended to raise a substantive due process claim regarding his placement at level 4, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of showing the sort of egregious conduct that would support a substantive due process claim.  *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016).

Accordingly, for all of the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### 2.      Equal Protection Clause

When setting forth his claims, Plaintiff references "discrimination" and "racial discrimination."  (Compl., ECF No. 1 PageID.4, 8.)  The Court construes these references to raise a Fourteenth Amendment equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which Is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated . . . ."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*,

470 F.3d 250, 260 (6th Cir. 2006).  Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"  *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, although Plaintiff references "racial discrimination," he fails to provide any facts in support of, or explanation for, his claim of race-based discrimination. Additionally, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated.  Instead, his allegations of discriminatory treatment are wholly conclusory.   Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  June 17, 2024                          /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge